UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------X

LOUIS P. RATEAU,

       Plaintiff,

   - against –

THE CITY OF NEW YORK, MICHAEL ELKIN,
*Individually and as a supervisory
employee of the City of New York*, NYC
Police Officer John Doe, NYC Police
Officer Richard Roe, *the identity and
number of whom is presently unknown to
plaintiff, persons intended being the
police officers and/or supervisors who
participated in the arrest, detention
and prosecution of plaintiff*,

      Defendants.
------------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

<u>**MEMORANDUM & ORDER**</u>

06-CV-4751 (KAM) (CLP)

MATSUMOTO, United States District Judge:

      Plaintiff Louis P. Rateau ("plaintiff" or "Rateau")

brings this action against the City of New York (the "City"),

Department of Information and Technology ("DoITT") employee

Michael Elkin ("Elkin") and two unnamed police officers

(collectively, "defendants") alleging false arrest, malicious

prosecution, and municipal liability in violation of 42 U.S.C. §

1983, and various state law tort claims, all arising from

plaintiff's allegedly unlawful arrest, confinement and

prosecution.  Plaintiff also claims that defendants conspired to

violate his constitutional rights, in violation of 42 U.S.C. §

1985, and that defendants discriminated against him based on race, in violation of 42 U.S.C. § 1981.

Presently before the court is defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of plaintiff's action. For the reasons set forth herein, defendants' motion for summary judgment is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts, taken from defendants' statement pursuant to Local Civil Rule 56.1 (Doc. No. 34, "Def. 56.1 Stmt."), are undisputed unless otherwise indicated. Plaintiff has failed to file a counter-statement of material facts as required by Local Civil Rule 56.1(b). Instead, plaintiff has represented that, with the exception of those facts plaintiff disputes in his Memorandum of Law (Doc. No. 31, "Pl. Mem."), plaintiff "concurs in the facts as submitted by Defendants . . . ." (Pl. Mem. at 1.)[1]

---

[1] Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)); *see* Local Civil Rule 56.1(c) ("material facts set forth in the statement required to be served by the moving party will be deemed to be admitted **for purposes of the motion** unless **specifically** controverted by a

Between March 5, 2004 and October 27, 2004, plaintiff made at least 65 phone calls to DoITT's 3-1-1 call center for non-emergency municipal services. (Def. 56.1 Stmt. ¶ 3.) From October 1, 2004 through October 27, 2004, plaintiff made at least 16 calls to 3-1-1. (*Id.* ¶ 4.) On at least one occasion, plaintiff asked to speak with a call center supervisor. (*See* Doc. No. 35, Declaration of Afsaan Saleem ("Saleem Decl."), Ex. F, Excepts from the Deposition of Louis P. Rateau ("Pl. Dep.") at 37.)

On October 27, 2004, in response to plaintiff's calls, Michael Elkin, an assistant commissioner of DoITT, called plaintiff from his direct telephone line at the 3-1-1 call center. (Def. 56.1 Stmt. ¶¶ 5, 9; *see* Pl. Dep. at 37; Saleem Decl., Ex. G, Excerpts from the Deposition of Michael Elkin ("Elkin Dep.") at 43.) Defendant Elkin testified that during this conversation, plaintiff threatened to do harm to Elkin and the 3-1-1 call center building. (*See* Elkin Dep. at 71; Def.

---

***correspondingly numbered paragraph in*** the statement required to be served by the opposing party.") (emphasis in original). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04-CV-2935, 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). For the purposes of this motion, defendants' statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

56.1 Stmt. ¶ 13.)  The call was not recorded.  (Def. 56.1 Stmt. ¶ 12.)  Plaintiff testified that he only spoke to Mr. Elkin once and that he did not make any threats.  (Pl. Dep. at 37-38.)

Mr. Elkin testified that during his tenure at 3-1-1, he had never previously received a personal threat or threat against the building.  (Elkin Dep. at 71.)  He testified that his conversation with plaintiff was the first time he received such threats.  (*Id.*)  Mr. Elkin further testified that callers regularly make threats to 3-1-1 operators.  (*Id.* at 72.)  On such occasions, operators are required, pursuant to office procedure, to refer threats to the New York City Police Department ("NYPD") by contacting 9-1-1 emergency services. (*see id.*)

Following his conversation with plaintiff, Mr. Elkin contacted DoITT's General Counsel's office.  (*Id.* at 73.)  Mr. Elkin testified that it was DoITT policy to notify the General Counsel's office any time 9-1-1 was contacted.  (*Id.*)  The General Counsel's office directed Mr. Elkin to follow call center procedure and contact 9-1-1 regarding the threats.  (*Id.* at 73-74.)

Thereafter, Mr. Elkin called 9-1-1 to report plaintiff's alleged threats.  (Def. 56.1 Stmt. ¶ 15; Saleem Decl., Ex. L, Incident Record ("Sprint Report"), dated Oct. 27, 2004, Bates No. 109.)  The Sprint Report indicates that Mr.

4

Elkin had reported "threats to city official and building."
(*Id.; see* Def. 56.1 Stmt. ¶ 16.)

Thereafter, on October 28, 2004, Mr. Elkin spoke with NYPD Detective Louis DiPaola regarding his conversation with plaintiff. (*See id.* ¶ 17; Saleem Decl., Ex. D, Investigation and Arrest Records, Bates No. 76.) According to NYPD records, Mr. Elkin reported that plaintiff became "agitated" and "threatened to kill" Elkin and "blow up the communications building." (*Id.*)

On November 3 and 9, 2004, various NYPD detectives, including Detective DiPaola, visited plaintiff's residence in an attempt to investigate the matter. (*See* Saleem Decl., Ex. D, Bates Nos. 74-75.) On November 9, 2004, Detective DiPaola left a telephone message for plaintiff requesting that plaintiff call him. (Def. 56.1 Stmt. ¶ 20.) That day, plaintiff returned the call and, according to NYPD records, plaintiff advised that he would surrender to the police on November 14, 2004. (*See* Saleem Decl., Ex. D, Bates Nos. 73-75; Def. 56.1 Stmt. ¶ 22; Pl Dep. at 41.) Plaintiff failed to surrender on that date. (Def. 56.1 Stmt. ¶ 24.)

Having failed to turn himself in, NYPD detectives arrested plaintiff on November 22, 2004. (*Id.* ¶ 28.) Detective DiPaola was the arresting officer. (*Id.* ¶ 29.) Mr. Elkin did not participate in and was not present for plaintiff's arrest.

(*Id.* ¶¶ 30-31.) Plaintiff testified that he was placed in custody immediately following his arrest. (*See* Pl. Dep. at 41; *see* Doc. No. 1, Complaint ("Compl.") ¶¶ 25-26.) Arrest records indicate that plaintiff spent approximately 5 to 6 hours in police custody on November 22, 2004. (*See* Saleem Decl., Ex. D, Bates Nos. 14-15; *see also* Saleem Decl., Ex. C, Notice of Claim.)

On December 20, 2004, plaintiff was charged in a Misdemeanor Complaint with Aggravated Harassment in the Second Degree and Harassment in the Second Degree. (*Id.* ¶ 33.) Although Mr. Elkin signed a declaration in support thereof (*see* Saleem Decl., Ex. D, Misdemeanor Complaint, Bates No. 56), he did not attend criminal court in connection with plaintiff's prosecution (Def. 56.1 Stmt. ¶ 34). Criminal court records indicate that plaintiff's prosecution was dismissed on November 15, 2005 by "MOTION OF DA[.]" (*See* Saleem Decl., Ex. H, Certificate of Disposition; *see also* Def. 56.1 Stmt. ¶ 35.)

## PROCEDURAL HISTORY

Plaintiff filed a notice of claim with the City Comptroller's Office on January 9, 2006. (*Id.* ¶ 37; Saleem Decl., Ex. C, Notice of Claim dated Jan. 5, 2006.) The notice of claim, which names only the City as a defendant, alleges the following claims:

> False arrest, False imprisonment, Malicious
> Prosecution, Intentional Infliction of Emotional
> Distress, Negligent Infliction of Emotional
> Distress, and Violation of Civil Rights under 42
> U.S.C. Section 1983 and Negligent
> Hiring/Training/Retention.

(*Id.*)

On August 28, 2006, plaintiff commenced the instant action against the City, Mr. Elkin and two unnamed NYPD officers. As previously mentioned, plaintiff alleges false arrest, false imprisonment, malicious prosecution, and municipal liability in violation of 42 U.S.C. § 1983, as well as state common law assault and battery claims. (*See generally*, Compl. ¶¶ 31-57.) Plaintiff also claims violations of 42 U.S.C. §§ 1981 and 1985. (*See id.* ¶ 32.)

## DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the movant. *Flanigan v. General Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001). Nevertheless, the nonmoving party may not rest "merely on allegations or denials" but must instead "set out specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B. Section 1983 Claims**

Plaintiff brings this action pursuant to, *inter alia*, 42 U.S.C. § 1983 for the alleged deprivation of his Constitutional rights. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1979) (internal quotation marks and citation omitted). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

**1. "Under Color of State Law"**

As a threshold matter, defendants contend that Mr. Elkin did not act under the color of state law and, thus, cannot be liable under Section 1983. (*See* Doc. No. 33, Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def.

Mem.") at 4-7; Pl. Mem. at 3.)  Specifically, defendants contend
that Mr. Elkin acted as an "ordinary citizen" when he called the
police to report plaintiff's alleged threats.  (Def. Mem. at 6.)
Defendants further contend that there is "no evidence . . . that
Elkin abused his position [as a City employee] in any way."
(*Id.*)  Defendants argue that the only aspect of Mr. Elkin's
position as a City employee that required him to act was his
office procedure to "contact an entity of the police department
before he called 911." (*Id.*)  Furthermore, in support of
defendants' contention that plaintiff was required to file a
notice of claim against Mr. Elkin pursuant to the New York
General Municipal Law, discussed below, defendants argue that
"Elkin's act in calling the police after he felt that the
plaintiff had threatened him, clearly falls within his scope of
employment." (*See id.* at 24.)

Plaintiff contends that Mr. Elkin acted under the
color of state law insofar as he "followed an established
protocol . . . for forwarding . . . the matter" to the NYPD.
(Pl. Mem. at 3.)  The court agrees that Mr. Elkin acted within
the scope of his employment and under the color of state law
during the alleged acts giving rise to plaintiff's claims.

"The traditional definition of acting under color of
state law requires that the defendant in a § 1983 action have

exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997) (quotation marks and citations omitted). While "[s]tate employment is generally sufficient to render the defendant a state actor[,]" *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 123 (2d Cir. 2004), it does not "automatically mean that a defendant's actions are taken under the color of state law" *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996). *See Morton v. City of Albany*, No. 08-CV-1304, 2009 U.S. Dist. LEXIS 73271, at *19-20 (N.D.N.Y. Aug. 19, 2009). The Second Circuit has instructed that a court should look to the overall nature of the defendant's conduct to determine if the defendant was acting under the color of state law. *See Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994).

The evidence indicates, and defendants' concession confirms, that Mr. Elkin acted under the color of state law. (*See* Def. Mem. at 24.) Mr. Elkin contacted plaintiff from his office telephone, in his capacity as an assistant commissioner of DoITT, and in response to plaintiff's request to speak with a call center supervisor. (*See* Pl. Dep. at 37; Def. 56.1 Stmt. ¶¶ 5-6, 9.) During their conversation, plaintiff allegedly threatened harm to Mr. Elkin and the call center facility. (*See*

Def. 56.1 Stmt. ¶ 13.)  Thereafter, Mr. Elkin followed 3-1-1
protocol and notified DoITT's General Counsel's office which, in
turn, directed Mr. Elkin to follow call center procedure and
contact the police.  (*Id.* at 73-74.)  To the extent that Mr.
Elkin acted in the manner alleged by plaintiff, he did so in his
official capacity as an assistant commissioner of DoITT.  Thus,
the evidence indicates that Mr. Elkin's interaction with
plaintiff arose solely out of Elkin's position as a DoITT
employee, not out of any personal relationship.  Indeed, there
is no evidence to indicate that Mr. Elkin acted as a private
citizen at any point during his interaction with plaintiff.

### 2. False Arrest and False Imprisonment Claims

#### a. Defendant Elkin

Defendants move to dismiss plaintiff's false arrest
and false imprisonment claims against Mr. Elkin on the grounds
that Elkin did not participate in plaintiff's arrest.  (*See* Def.
Mem. at 10-11.)  Plaintiff opposes defendant's motion on the
basis that Mr. Elkin "fabricated the threat" allegedly made by
plaintiff.  (Pl. Mem. at 5; *see* Pl. Dep. at 37-38.)  Plaintiff
contends that "if Defendant Elkin's accusation against Plaintiff
was a lie, Defendant Elkin knew full well that there was no
basis whatsoever to have Plaintiff arrested."  (Pl. Mem. at 5.)

"Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" *Guadagni v. New York City Transit Auth.*, No. 08-CV-3163, 2009 U.S. Dist. LEXIS 55251, at *15 (E.D.N.Y. June 30, 2009) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Further, plaintiff's "false arrest and false imprisonment claims may be evaluated together, as '[i]n New York, the tort of false arrest is synonymous with that of false imprisonment.'" *Guadagni,* 2009 U.S. Dist. LEXIS 55251, at *15 (quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("common law tort of false arrest is a species of false imprisonment.").

The elements of a false arrest and false imprisonment claim are that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *See Singer*, 63 F.3d at 118; *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). The last three elements are not in dispute.

As to the first element – intent to confine – a defendant who furnishes information to police will not generally be held liable for false arrest when the police exercise independent judgment to arrest a plaintiff. *See Du Chateau v. Metro-North Commuter RR. Co.*, 253 A.D.2d 128, 131 (1st Dep't 1999). Notwithstanding, "even where there is no claim that a defendant actually restrained or confined a plaintiff, a claim of false arrest or false imprisonment may lie where a plaintiff can 'show that . . . defendan[t] instigated his arrest, thereby making the police . . . agents in accomplishing [defendant's] intent to confine the plaintiff.'" *See Weintraub v. Board of Educ.*, 423 F. Supp. 2d 38, 45 (E.D.N.Y. 2006) (quoting *Carrington v. City of New York*, 201 A.D.2d 525, 526-27 (2d Dep't 1994)); *see King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

What actually occurred during Mr. Elkin's October 27, 2004 conversation with plaintiff is in dispute. Mr. Elkin reported to the police and subsequently testified that plaintiff threatened his personal safety and to do harm to the 3-1-1 call center. (*See* Elkin Dep. at 71-73; Saleem Decl., Ex. D, Bates Nos. 56, 76.) By contrast, plaintiff testified that he made no such threats. (Pl. Dep. at 37-38.) The conversation was not recorded. (Def. 56.1 Stmt. ¶ 12.) Accordingly, if a jury were

to believe plaintiff's account, rather than Mr. Elkin's, it could reasonably infer that Mr. Elkin knew that plaintiff had not made any threats, but nonetheless intended to have plaintiff arrested by making false reports to the police. Summary judgment for Mr. Elkin on plaintiff's federal false arrest claim is therefore inappropriate.

Defendant Elkin urges the court to find that he is entitled to qualified immunity. (*See* Def. Mem. at 17-18.) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects all officials except those who "knowingly violate" the Constitution or those who are plainly incompetent. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In support of his position, Mr. Elkin relies on *Rothman v. New York City Transit Auth.*, 215 F.3d 208 (2d Cir. 2000) for the proposition that the "mere reporting" of a suspected crime cannot support a Section 1983 claim. (*See* Def. Mem. at 17-18.) In that case, the court found that a civilian defendant was entitled to qualified immunity as to the

plaintiff's malicious prosecution claim, even though the information that the defendant provided to police was insufficient ultimately to warrant prosecution.  There, the Second Circuit noted that even if the reported information was false, there was no evidence from which an inference could be drawn indicating that the defendant "knew or thought that the assertions he made to the police were false at the time that he made them."  *See Rothman*, 215 F.3d at 218 n.5.

Accepting the facts in the light most favorable to plaintiff, the court declines to grant Mr. Elkin qualified immunity.  Although denied by defendants, admissible evidence in the form of plaintiff's sworn deposition testimony provides a basis from which a jury could reasonably conclude that Mr. Elkin knowingly gave false statements to the police which, in turn, led to the criminal charges against plaintiff.  Any reasonable person, let alone a reasonable government official, should know that such conduct is unlawful and a violation of a person's right not to be arrested and prosecuted without probable cause.

Accordingly, because there are factual disputes that, if resolved in plaintiff's favor, would warrant a finding that the Mr. Elkin intentionally caused plaintiff's false arrest, and because Mr. Elkin is not entitled to qualified immunity, the court denies summary judgment for Mr. Elkin on plaintiff's federal false arrest claim.

## b. Unnamed Police Officer Defendants

Although defendants' counsel has failed to address plaintiff's false arrest and false imprisonment claims as against the unnamed police officer defendants, the court nevertheless considers whether such claims should proceed to trial. As to the unnamed police officer defendants, "probable cause" to arrest is a complete defense to an action for false arrest under Section 1983 and New York state common law. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999); *Weyant*, 101 F. 3d at 852 ("[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest") (internal quotation marks and citation omitted).

"The requirement of probable cause does not create a high bar for law enforcement." *Sforza v. City of New York*, No. 07-CV-6122, 2009 U.S. Dist. LEXIS 27358, at *40 (S.D.N.Y. Mar 31, 2009). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). Significantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F.

Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S.
547, 555, (1967)).  Rather, the court looks only to the
information that the arresting officer had at the time of the
arrest, *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123,
128 (2d Cir. 1997), so long as it was reasonable for the
arresting officer to rely on those facts.  *See Bernard v. United
States*, 25 F. 3d 98, 103 (2d Cir. 1994).

In this case, the unnamed officers, namely, arresting
officer Detective DiPaola, had probable cause to arrest
plaintiff.  The undisputed evidence indicates that Detective
DiPaola interviewed Mr. Elkin the day after Elkin reported
plaintiff's alleged threats to 9-1-1.  (*See* Def. 56.1 Stmt. ¶
17; Saleem Decl., Ex. D, Investigation Record, Bates No. 76.)  A
review of Detective DiPaola's record of that interview indicates
that Mr. Elkin, "the director of operations at 311" reported
that plaintiff "became very agitated and threatened to kill . .
. [Elkin] and blow up the communications building." (*Id.*)  Mr.
Elkin also reported that plaintiff had made "40-50 complaints
since 311 started" and that plaintiff was "very disturbed."
(*Id.*)  The evidence further establishes that Detective DiPaola
contacted plaintiff and that plaintiff indicated that he would
surrender to the police.  (*See id.*, Bates No. 73-75; Def. 56.1
Stmt. ¶ 22; Pl Dep. at 41.)  Plaintiff was arrested after he
failed to turn himself in.  (*See* Def. 56.1 Stmt. ¶¶ 24-28.)

The existence of a factual dispute as to whether plaintiff actually threatened Mr. Elkin is immaterial to plaintiff's false arrest claim against the police officer defendants.  Probable cause may exist based on false or mistaken information, so long as the police, as here, acted reasonably and in good faith.  *See Bernard*, 25 F.3d at 102; *Price v. Meehan*, No. 06-CV-5016, 2009 U.S. Dist. LEXIS 46254, at *8 (E.D.N.Y. June 1, 2009) (citation omitted); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (once a police officer has probable cause, he need not explore every plausible claim of innocence before making an arrest).  Indeed, there is no evidence to indicate that Detective DiPaola had any reason to doubt Mr. Elkin's report.  Thus, Detective DiPaola's actions were objectively reasonable.  *See Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.")  Accordingly, plaintiff's federal false arrest/false imprisonment claims against the unnamed police officer defendants are dismissed.

### 3. Malicious Prosecution

#### a. Defendant Elkin

Defendant Elkin seeks summary judgment with respect to plaintiff's malicious prosecution claim. (*See* Def. Mem. at 11-16.) Mr. Elkin contends that plaintiff has failed to established a *prima facie* case of malicious prosecution. Plaintiff opposes the motion on the grounds that there is a triable issue of fact as to Mr. Elkin's alleged malicious intent to prosecute plaintiff. (*See* Pl. Mem. at 5.)

To establish a *prima facie* case of malicious prosecution case, a plaintiff must establish (1) that the defendant either commenced or continued a criminal proceeding against the plaintiff, (2) without probable cause, (3) with actual malice, and (4) that the proceeding terminated in plaintiff's favor. *See O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996) (applying New York law); *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). The elements of malicious prosecution under Section 1983 are the same as claims for malicious prosecution under New York law. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). Mr. Elkin disputes each element.

As to the first element, Mr. Elkin argues that he did not commence the criminal proceedings against plaintiff because "he merely passed information on to the police, who then,

presumably passed it on to the District Attorney's office."
(Def. Mem. at 12-13.)  Further, Elkin argues that "there is no
evidence "that he fabricated the threat against him . . . ."
(Def. Mem. at 13.)

By contrast, plaintiff contends that Mr. Elkin
initiated the prosecution by falsely reporting to police that
plaintiff had made threats against him and his workplace, and
continued the prosecution by signing a criminal complaint with
false information.  (*See* Pl. Mem. at 4.)  Contrary to Mr.
Elkin's contention, plaintiff argues that there is admissible
evidence, in the form of plaintiff's testimony, that Mr. Elkin
fabricated the threats.  (*See* Pl. Dep. at 37-38.)

A complaining witness may be liable for malicious
prosecution if it is found that he withheld, misrepresented or
falsified evidence, or otherwise acted in bad faith.  *See White
v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) (citations omitted);
*see also Brown v. Nassau County*, 306 A.D.2d 303 (2d Dep't 2003)
(citations omitted); *Weiss v. Hotung*, 26 A.D.3d 855, 857 (4th
Dep't 2006) ("there is an issue of fact whether an employee of
[defendant] intentionally gave false information to the police,
resulting in the commencement of the criminal proceeding against
plaintiff") (citation omitted).

Mr. Elkin's contention that plaintiff's allegations of
fabrication lack evidentiary support is plainly contradicted by

the record.  As previously discussed, the parties have presented

conflicting accounts of what transpired during their October 27,

2004 conversation.  On a motion for summary judgment, it is not

the court's function to assess credibility.  *See Fischl v.*

*Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("credibility

assessments, choices between conflicting versions of the events,

and the weighing of evidence are matters for the jury, not for

the court on a motion for summary judgment.")

Whether plaintiff threatened Mr. Elkin is relevant to

whether the commencement of criminal harassment charges against

plaintiff were justified.  Thus, if a jury credits plaintiff's

version of the events, it may reasonably conclude that Mr. Elkin

caused the commencement of criminal proceedings against

plaintiff.

Similarly, as to the second element — probable cause —

there is a disputed issue of material fact concerning the

existence of probable cause to commence criminal proceedings

against plaintiff.  The probable cause determination in a

malicious prosecution claim is "whether there was probable cause

to believe the criminal proceeding could succeed and, hence,

should be commenced."  *Mejia v. City of New York*, 119 F. Supp.

2d 232, 254 (E.D.N.Y. 2000) (citing *Posr*, 180 F.3d at 417).

Because only the jury can properly decide whether Mr. Elkin

falsely reported plaintiff's alleged threats, there is a triable

factual dispute as to the existence of probable cause to commence criminal proceedings against plaintiff for harassment.[2] *See Weiss*, 26 A.D.3d at 857 (the existence of a triable issue of fact as to whether defendant intentionally gave false information to the police precluded a finding of probable cause to initiate a criminal prosecution against the plaintiff).

Further, as to the third element, which requires the plaintiff to put forth evidence of actual malice, there is a triable issue of fact concerning Mr. Elkin's intent. "[I]n a malicious prosecution action, malice is closely related to the lack of probable cause." *Smart v. City of New York*, No. 08-CV-2203, 2009 U.S. Dist. LEXIS 30241, at *20 (S.D.N.Y. Apr. 1, 2009) (citing *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994)). Indeed, the Second Circuit has observed that "the existence of malice may be inferred from a finding that defendants lacked probable cause to initiate criminal proceedings." *Rounseville*, 13 F.3d at 631 (citation omitted). Thus, the court's finding that "the lack of probable cause

---

[2] Mr. Elkin is not entitled to qualified immunity as to plaintiff's malicious prosecution claim. Plaintiff's deposition testimony is admissible evidence from which a jury could reasonably conclude that Mr. Elkin knowingly gave false statements to the police, which in turn led to the commencement of criminal charges against plaintiff. As previously discussed, Mr. Elkin should know that giving false statements to the police is unlawful and a violation of a person's right not to be prosecuted without probable cause.

presents a jury question likewise suggests that the existence of malice cannot be resolved through summary judgment." *See id.*

As to the fourth element — favorable termination — Mr. Elkin contends that the dismissal of plaintiff's prosecution on a motion of the District Attorney is insufficient to establish that the criminal proceedings terminated in favor of plaintiff. (Def. Mem. at 16; *see also* Saleem Decl., Ex. H, Certificate of Disposition.)  Plaintiff contends that the grounds for termination of the criminal proceedings are unclear and thus a material factual dispute exists as to whether the proceedings terminated in plaintiff's favor.  (Pl. Mem. at 4-5.)

As the Second Circuit observed in the *Rounseville* case, "[t]he parties' very dispute over the details of the terminated criminal proceedings suggests why this element of the malicious prosecution claim cannot be resolved through summary judgment." *Rounseville*, 13 F.3d at 629.  The record is devoid of any "specific evidence concerning why the charges brought by defendants" against plaintiff were dismissed. *See id.*  Indeed, the Certificate of Disposition indicates only that the case was dismissed on "MOTION OF DA[.]"  (Saleem Decl., Ex. H.)

Because the facts surrounding the termination are in dispute, summary judgment dismissal of plaintiff's malicious prosecution claim against defendant Elkin on this ground is inappropriate.  Accordingly, Mr. Elkin's motion for summary

judgment as to plaintiff's malicious prosecution claim is denied.

### b. Unnamed Police Officer Defendants

As to the unnamed police officer defendants, "the existence of probable cause at the time of arrest may not be sufficient to provide probable cause for a prosecution . . . ." *Sforza*, 2009 U.S. Dist. LEXIS 27358, at *47 (S.D.N.Y. Mar 31, 2009) (citing *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (applying New York law)). Indeed,

> even when probable cause is present at the time
> of arrest, evidence could later surface which
> would eliminate that probable cause. In order
> for probable cause to dissipate, the groundless
> nature of the charge must be made apparent by the
> discovery of some intervening fact.

*Sforza*, 2009 U.S. Dist. LEXIS 27358, at *47 (quoting *Kinzer*, 316 F.3d at 144).

As previously discussed, the undisputed evidence demonstrates that the police officer defendants, namely Detective DiPaola, had probable cause to arrest plaintiff. There is, however, no evidence to indicate that the probable cause that existed at the time Detective DiPaola arrested plaintiff dissipated between the arrest and prosecution. *See Sforza*, 2009 U.S. Dist. LEXIS 27358, at *48 (granting summary judgment on plaintiff's malicious prosecution claim where the plaintiff failed to demonstrate, through admissible evidence,

that the probable cause that existed at the time of the arrest had "dissipated" between the plaintiff's arrest and prosecution). As discussed above, there is no evidence to indicate Detective DiPaola had any reason to doubt Mr. Elkin's report. Nor has plaintiff presented any evidence to indicate that Detective DiPaola or any other police officer received information which cast Mr. Elkin's report into question.

Further, the existence of a material factual dispute as to Mr. Elkin's motivation to report plaintiff's alleged threats is immaterial to plaintiff's malicious prosecution claims against the police officer defendants. There is simply no evidence that Detective DiPaola knowingly made any false statements about the circumstances of plaintiff's arrest or otherwise acted in bad faith. *Cf. White*, 855 F.2d at 962 (observing that a complaining witness may be liable for malicious prosecution when it is found that he withheld, misrepresented or falsified evidence, or otherwise acted in bad faith). Accordingly, summary judgment dismissal of plaintiff's malicious prosecution claims against the police officer defendants is warranted.

### 4. Municipal Liability Claim

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely

upon the basis of *respondeat superior*. *See Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). To impose liability under Section 1983 on a municipality for the acts of its employees, a plaintiff must "plead and prove . . . (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted).

"[M]ere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim 'in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Additionally, "[a] single incident involving an employee below the policymaking level will generally not suffice to support an inference of a municipal custom or policy . . . ." *Davis*, 355 F. Supp. 2d at 678 (citing *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

Plaintiff alleges that the City "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in New York City" and that such policies and customs violated plaintiff's constitutional rights.  (Compl. ¶ 52.)  Among other things, plaintiff alleges that the City improperly and inadequately investigated citizen complaints of police misconduct, tolerated police misconduct, and failed to discipline unlawful conduct by its employees.  (*See* Compl. ¶ 53-54.)

Defendants contend that plaintiff's Section 1983 claim against the City should be dismissed because plaintiff has failed to identify "any formal policy" sufficient to give rise to Section 1983 liability.  (*See* Def. Mem. at 20-21.) Defendants further contend that plaintiff's sole basis for alleging a Section 1983 claim against the City is his plaintiff's November 22, 2004 arrest.  (*Id.* at 21.)  Plaintiff's opposition brief makes no effort to dispute the City's position.

There is no evidence to indicate that the City had a custom or policy that caused plaintiff's alleged injuries, and plaintiff does not contend otherwise in opposition to the instant motion.  Accordingly, defendants' motion for summary judgment as to plaintiff's Section 1983 claim against the City is granted.

**C. Section 1981 Claim**

Plaintiff asserts a claim under 42 U.S.C. § 1981.

Section 1981(a) provides, in relevant part,

> All persons within the jurisdiction of the Unites States
> shall have the same right in every State and Territory to
> make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and
> exactions of every kind, and no other.

42 U.S.C. § 1981(a).

To state a claim under Section 1981, a plaintiff must
allege (1) membership in a racial minority, (2) defendant's
intent to discriminate on the basis of race, and (3)
discrimination concerning one or more of the activities
enumerated in the statute. *See Mian v. Donaldson, Lufkin &
Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Wong v.
Yoo*, 04-CV-4569, 2009 U.S. Dist. LEXIS 73067, at *77 (E.D.N.Y.
Aug. 18, 2009) (citation omitted).

There is authority in this Circuit for the proposition
that "where a plaintiff brings an action under § 1983 and § 1981
and the defendants are state actors, the claims merge . . . and
'the § 1981 claim is treated exactly like the § 1983 claim,
because it is merged into it and is considered as a single
claim.'" *Caidor v. M&T Bank*, No. 05-CV-297, 2006 U.S. Dist.
LEXIS 22980, at *40 (N.D.N.Y. Mar. 27, 2006) (quoting *Booker v.

*Board of Educ.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002))
(footnote omitted).  In *Caidor*, the court dismissed the
plaintiff's Section 1981 claim as "redundant" of his Section
1983 claims.  *See Caidor*, 2006 U.S. Dist. LEXIS 22980, at *54-56
(dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), the
plaintiff's Section 1981 claim and denying motion to dismiss as
to the plaintiff's false arrest claims); *but see Wong v. Yoo*,
No. 04-CV-45692009 U.S. Dist. LEXIS 73067, at*73 (treating
Section 1981 and 1983 claims as distinct causes of action);
*Palmieri v. Town of Babylon*, No. 06-CV-0968, 2008 U.S. Dist.
LEXIS 59550, at *59-60 (E.D.N.Y. Aug. 4, 2008) (same).

Even if plaintiff's claims under Section 1981 and
Section 1983 do not merge, defendants are entitled to summary
judgment as to plaintiff' Section 1981 claim.  As to the first
element — membership in a racial minority — although plaintiff
has not alleged his race (*see generally*, Compl.; Saleem Decl.,
Ex. C, Notice of Claim), arrest records indicate that he is
African American (*see* Saleem Decl., Ex. D, Bates No. 65).  As to
the second element — intent to discriminate — plaintiff has not
alleged or presented any evidence that any of the defendants
discriminated against plaintiff due to his race or ethnicity.
Nor has plaintiff presented evidence of circumstances giving
rise to an inference of discriminatory intent.  Lastly, there is
no evidence to support the third element — that defendants

discriminated against plaintiff concerning one or more of the activities enumerated in Section 1981.

Accordingly, plaintiff has failed to raise a genuine issue of material fact warranting trial on his Section 1981 claim. Thus, the court grants defendants' motion for summary judgment as to plaintiff's Section 1981 claim.

## D. Section 1985 Claim

Defendants also seek summary judgment as to plaintiff's claim under 42 U.S.C. § 1985. Section 1985 provides, in relevant part,

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . .; in any case of conspiracy . . ., if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

A conspiracy claim under Section 1985(3) has four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any

right of a citizen of the United States." *Mian*, 7 F.3d at 1087

(citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S.

825, 828-29 (1983)); *see Palmieri*, 2008 U.S. Dist. LEXIS 59550,

at *61.  "Furthermore, the conspiracy must also be motivated by

'some racial or perhaps otherwise class-based, invidious

discriminatory animus behind the conspirators' action.'" *Mian*,

7 F.3d at 1087 (quoting *Scott*, 463 U.S. at 829).

Plaintiff alleges that defendants "conspired to

deprive" plaintiff of his Constitutional rights.  (*See* Compl. ¶

32.)  Defendants contend that this sole allegation is

insufficient to support a Section 1985 conspiracy claim and that

plaintiff has otherwise failed to present any evidence of a

conspiracy among the defendants.  Once again, plaintiff makes no

effort to dispute defendants' position.

Plaintiff has alleged no facts in his complaint, and

has provided no evidence in the record, indicating the existence

of a conspiracy to interfere with his rights.  Nor is there any

evidence that any alleged conspiracy was motivated by racial or

class-based animus.  Because there is no evidence to support a

Section 1985 claim, summary judgment on the claim is warranted.

Accordingly, plaintiff's Section 1985 claim is dismissed.

**E. State Law Claims**

    **1. False Arrest, False Imprisonment,
Battery and Assault Claims**

Defendants contend that plaintiff's state law false arrest, false imprisonment, battery and assault claims should be dismissed because of plaintiff's failure to timely file a notice of claim pursuant to New York General Municipal Law ("GML") § 50-e. (*See* Def. Mem. at 21-22.) Plaintiff has failed to oppose defendants' motion on this basis.

Defendants correctly assert that plaintiff's state law tort claims against the City and its officers and employees are governed by the GML. Under GML § 50-e, "notice of claim shall . . . be served . . . within ninety days after the claim arises." GML § 50-e(1)(a); *see Maier v. New York City Police Dep't*, No. 08-CV-5104, 2009 U.S. Dist. LEXIS 78821, at *12 (E.D.N.Y. Sept. 1, 2009) ("Pursuant to New York General Municipal Law § 50-e, a plaintiff who asserts a state law tort claim against a municipal entity or its employees for acts that occurred within the scope of their employment must file a notice of claim within ninety days after the incident giving rise to the claim.") (citation omitted). Failure to timely comply with the notice requirements

of GML § 50-e requires dismissal of state law tort claims against a municipal entity and its employees. *Id.*, at *12.[3]

As GML § 50-e provides, the 90-day period by which a notice of claim must be filed commences "after the claim arises . . . ." Section 50-e(1)(a). "In an action for false arrest or false imprisonment the GML § 50-e(1)(a) 90-day period commences on the day the plaintiff is released from actual custody." *Morgan v. Nassau County*, No. 03-CV-5109, 2009 U.S. Dist. LEXIS 79180, at *46 (E.D.N.Y. Sept. 2, 2009) (citations omitted); *see Salman v. Econo Lodge*, 303 A.D.2d 923 (4th Dep't 2003) ("A cause of action for false arrest accrues when the confinement terminates"). Further, "[c]auses of action for assault and battery accrue immediately upon the occurrence of the tortious act . . . ." *Espada v. Schneider*, 522 F. Supp. 2d 544, 550 (S.D.N.Y. 2007) (quoting *Lettis v. United States Postal Service*, 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998)).

---

[3] By contrast, for federal Section 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations in original). New York's three-year statute of limitations for unspecified personal injury actions, N.Y. C.P.L.R. § 214(5), applies to claims under Section 1983. *See Cloverleaf Realty of New York, Inc. v. Town of Wawayanda*, 572 F.3d 93, 94 (2d Cir. 2009) (citations omitted). A notice of claim is not required for federal civil rights claims arising under Section 1983. GML § 50-k(6); *Day v. Moscow*, 955 F.2d 807, 814 (2d Cir. 1992); *Maier*, 2009 U.S. Dist. LEXIS 78821, at *9.

Here, plaintiff filed his notice of claim on January 9, 2006. (Def. 56.1 Stmt. ¶ 37; Saleem Decl., Ex. C, Notice of Claim.) Plaintiff's state law false arrest, false imprisonment, battery and assault claims accrued on November 22, 2004, the date of his arrest, confinement and release from custody. (*See* Def. 56.1 Stmt. ¶ 28; Saleem Decl., Ex. D, Bates No. 68, Desk Appearance Ticket dated Nov. 22, 2004.) Plaintiff's notice of claim falls clearly outside the ninety day limitations period set forth in GML § 50-e. Thus, plaintiff's state law false arrest, false imprisonment, assault and battery claims are dismissed.[4] *See Maier*, 2009 U.S. Dist. LEXIS 78821, at *11-12 (dismissing, *inter alia*, state law assault, battery, false arrest and false imprisonment claims for failure to timely comply with the notice requirements of GML § 50-e).

Plaintiff's state law malicious prosecution claim requires a different analysis. That cause of action did not accrue until the criminal charges against him were terminated on November 15, 2005. *See Morgan*, 2009 U.S. Dist. LEXIS 79180, at

---

[4] Moreover, plaintiff has failed to raise a disputed issue of material fact warranting trial on his battery and assault claims. Indeed, there is no evidence that any force, let alone "objectively unreasonable" force, was used during plaintiff's arrest or incarceration. For that additional reason, summary judgment as to plaintiff's battery and assault claims is appropriate. *See Grant v. City of New York*, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) (granting summary judgment on the plaintiff's assault, battery and excessive force claims where plaintiff failed to establish that "objectively unreasonable" force was used during her arrest) (citation omitted).

*48 (citing *Peresluha v. City of New York*, 60 A.D.2d 226, 400 N.Y.S.2d 818, 820 (1st Dep't 1977)).  Thus, plaintiff's January 9, 2006 notice of claim was timely filed with respect to plaintiff's malicious prosecution claim.

## 2. Malicious Prosecution Claim

Defendants contend that plaintiff's state law malicious prosecution claim against Mr. Elkin should be dismissed because plaintiff has failed to name Mr. Elkin "as a respondent and serve him with a notice of claim."  (Def. Mem. at 24.)  Defendants contend that plaintiff was required to name Mr. Elkin in a notice of claim because Elkin's alleged wrongful conduct "clearly falls within his scope of employment" and thus requires that the City "represent and indemnify him."  (*Id.*)  Again, plaintiff has failed to oppose defendants' motion on this basis.

"General Municipal Law § 50-e makes unauthorized an action against individuals who have not been named in a notice of claim thus, warranting dismissal of the state claims against [the individually-named defendants]."  *Tannenbaum v. City of New York*, 30 A.D.3d 357, 358 (1st Dep't 2006) (citation omitted) (dismissing state law tort claim but permitting federal civil rights claims to proceed); *Gonzalez v. City of New York*, 872 N.Y.S.2d 690, 2008 N.Y. Misc. LEXIS 4642, at *31 (Sup. Ct. Kings County Aug. 7, 2008) (among other things, dismissing plaintiff's

state law malicious prosecution claim against certain individually-named defendants "due to the failure to name them in [plaintiff's] notice of claim" and denying their motion for summary judgment as to plaintiff's federal Section 1983 malicious prosecution claim).

Plaintiff's notice of claim fails to name or mention Mr. Elkin. (*See* Saleem Decl., Ex. C.) Accordingly, plaintiff's state law claims against Mr. Elkin, including his state law malicious prosecution claim, are dismissed.

## F. *Respondeat Superior* Liability

Plaintiff also seeks to hold the City liable as the employer of Mr. Elkin and the unnamed police officer defendants under the state law doctrine of *respondeat superior*. (*See* Compl. ¶ 47.) Although the Supreme Court has held that a plaintiff is prohibited from seeking relief under Section 1983 against a municipal defendant under a theory of *respondeat superior*, *see Monell*, 436 U.S. at 691, to the extent plaintiff's *respondeat superior* claim arises from state law, not Section 1983, the claim may proceed against the City. *See Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir. 1985) (dismissing Section 1983 claims under *Monell* but permitting state law claims based on *respondeat superior* to proceed).

Notwithstanding, "there can be no imposition of vicarious liability in the absence of underlying liability." *Shapiro v. Kronfeld*, No. 00-CV-6286, 2004 U.S. Dist. LEXIS 23807, at *70 (S.D.N.Y. Nov. 30, 2004) (citing *Wende C. v. United Methodist Church*, 6 A.D.3d 1047, 1052 (4th Dep't 2004) (collecting cases)).  Because plaintiff's state law claims have been dismissed, plaintiff's state law claims against the City premised on a theory of *respondeat superior* are dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The court denies summary judgment as to plaintiff's false arrest and malicious prosecution claims under Section 1983 against defendant Elkin. The court grants defendants' motion for summary judgment in all other respects.

The parties shall participate in a telephone conference on October 23, 2009 at 4:30 p.m., which plaintiff's counsel shall initiate. The parties shall be prepared to discuss the scheduling of a joint pretrial order and trial date, as well as any contemplated motions *in limine*.

SO ORDERED.

Dated:  Brooklyn, New York
        September 29, 2009

                                    /s/
                        _____
                        KIYO A. MATSUMOTO
                        United States District Judge
                        Eastern District of New York